Opinion of the court, by
Judge Hitchcock:
The defense relied upon in this case is, that the plaintiff shows no title, inasmuch as the patent under which he claims is void under the act of Congress of March 2, 1807. This act was passed for the purpose of extending the time for locating Virginia military warrants, etc., between the Little Miami and Scioto rivers; and section 1 contains the following proviso: “That no locations as aforesaid, within the above-mentioned tract, after the passing of this act, shall be made on tracts of land for which patents had been previously issued, or which had been previously surveyed; and any patent which may nevertheless be obtained for land located contrary to the provisions of this section, shall be considered as null and void.” 4 U. S. L. 92; Swan’s L. 134.
This same provision has been contained in all the laws since enacted, for the purpose of giving further time to make locations upon these lands. And no person acquainted with the subject can for one moment doubt the wisdom of the enactment. Perhaps no one thing has done more to put a stop to litigation within the district, and to quiet the titles of the inhabitants. It is a *524 beneficial law, and should be construed liberally to effect the object intended. It was not intended alone to settle controversies between locators and speculators — these can usually take care of themselves — but to give peace to the citizens.
The great inquiry is, whether this case is within the provisions of this law. That the land entered and surveyed by McArthur, *and upon which survey his patent was issued, had been previously entered'and surveyed by Tench, there can be no doubt. But it is objected by the plaintiff, that admitting the survey of Tench to be a good, valid, and subsisting survey, yet this defendant can not take advantage of the law of 1807, to protect himself, because he does not connect himself with the title of Tench, or show that ho is vested with any interest in the survey. To sustain this position, the case of Holt’s Heirs v. Hamphill’s Heirs, 3 Ohio, 232, is cited. It is claimed that the certificates of tax sales, and the deeds introduced by the defendant,^ do not show any title in him, nor in any way connect him with the Tench survey. If this were a controversy between Tench or any other person claiming under him, as heir or assignee, this position would be conclusive. Although these papers show that the proprietor of this survey, like many other locators in the district at an early period, was negligent, grossly negligent, in the payment of taxes, still they do not contain all the evidence requisite to prove that the land was properly sold. And in the case of Holt’s Heirs v. Hamphill’s Heirs, it was held that such proof was necessary before a tax claimant could so far connect himself with a survey as to be protected under the act of 1807, But that case was entirely different from the one now before the court. The entry of- Boyer, in whose name the land had been taxed, was withdrawn before the entry and survey of Holt. So that, at the time Holt’s location was made, the lands included within it were vacant, and the patent was not affected by the law of 1807. And the court clearly intimate the opinion that had the tax sale been valid, it would have been beyond the power of Boyer or those claiming under him to destroy the rights of the delendants by withdrawing the entry. But as it was not shown to be legal, it was held that the supposed tax purchasers had no right to contest the withdrawal and the rights of the plaintiff under his patent. In the case under consideration, there is no pretense that the entry of Tench has *525 been withdrawn, either by himself or any person claiming under him.
But this argument is like an instrument with two edges. It may be used either way. What is it? The lessors of the plaintiff say to the defendant, although John Tench might with propriety question our title, although as to him we admit it would be void, still you have no right to contest it, because you do not properly connect-yourself with Tench, by showing that the tax sales under which you claim were legal and in conformity with *the statute. Might not the defendant with propriety reply: “What business have you to examine the legality of my tax title? That is a question between John Tench and myself. By your own admissions your pretended title is void by a law of the United States, and it is not for you to say my tax title is irregular and void.”
The defendant is in possession of-this land, and in possession under claim of title. Possession itself is so far evidence of title, that it will be protected until a better title is produced. The general rule is thát a plaintiff in ejectment must recover by the strength of his own title. He must show a right of possession, at least a superior right to that of a defendant. In the case under consideration the plaintiff introduces a patent, and the proofs in the case show, that the entry and survey upon which this patent was predicated, were made upon land which had been previously surveyed. A law of Congress says, that a patent issued under such circumstances “ shall be considered as null and void." Such patent, if “null and void" conveys no title, and when a positive law of Congress says it shall be “ null and void," this court can not with propriety say it is good and available.
It is urged, however, by the counsel for plaintiff, that the survey of Tench was void and did not appropriate the land included within it. If so, it follows that the location of McArthur was properly made, and the plaintiff is entitled to judgment.
The reason assigned why the survey of Tench is void is, that Tench bad no assignment of the Trezvant warrant. Whether he had such assignment is the great question in the case, and the one upon which it must be decided.
There is no positive evidence of such assignment. On the contrary, Allen Latham states that he has searched the office of the principal surveyor and can find none. This is the place where it *526 should have been deposited. He states further that it has been long the opinion of locators that there was no assignment. This opinion may possibly be entitled to some weight; but really it is difficult to see upon what principle it can bo received as evidence. If the opinions of locators on these subjects were always the same, it might do to rely upon them; but as a matter of fact, we know that they are subject to change, and some have been so uncharitable as to suppose that they varied with their respective interests. Latham states further, that Colonel Anderson, former principal surveyor, had told him that no such assignment had been deposited in the office.
*This being the negative testimony, and there being no positive testimony in the case proving an assignment, the plaintiff must succeed, unless the facts and circumstances are such as to warrant the court in presuming an assignment. It must be remembered that no particular.mode of assigning military land warrants was prescribed by law. It might be done by an indorsement upon the warrant itself, or on a separate paper. Nor was there anything in the law requiring it to be done even in writing. That mode was adopted most convenient to the parties. 7 Wheat. 122. Courts will, under circumstances sufficiently strong, presume a grant or a deed, and there is no impropriety in a proper case made in presuming the assignment, and such presumption was made in the case of Bouldin v. Massie’s Heirs, 7 Wheat. 122; and in that case the subject is very fully and at large discussed.
What, then, are the circumstances of this case? In the year 1787, an entry is made on a part of the Trozvant warrant in the name of Tench, assignee. This entry was surveyed March 7,1794, and recorded June 24, 1796. All this transpired, it is believed, very soon after the office of the principal surveyor had been established, and probably before the business of that office was reduced to a system. Would the principal surveyor have permitted this, if there was no evidence of assignment produced to him? It will be remembered that he did not say to the witness, Latham, that the warrant was not assigned to Tench, but that no assignment had been deposited in the office. Trezvant’s warrant, No. 2,377, authorized the holder to locate 6,000 acres of land. In 1787, not only entry No. 729, of 1,200 acres, was made on this warrant, in the name of John Tench, assignee, but four other entries on the same warrant and in the same manner, of 1,200 acres each. From *527 this time until 1814, a period of more than twenty years, we do not find Trezvant, the original owner of this warrant, making any inquiry after his warrant, or his land. Is it thus, that a man having a claim to 6,000 acres of land, like that in the military district, usually conducts with respect to it? Or rather, is it thus, that a man usually neglects attending to his rights and his property? Trezvant was not in a foreign country; he was a resident of the adjoining State of Yirginia. But even in 1814, Trezvant did not inquire after this land. But Cadwallader Wallace, a locator of lands in the district, visits him in Yirginia, and procures *frorn him an assignment of the warrant, not upon the warrant itself, for that was in the surveyor’s office, but upon a separate paper. This assignment is expressed to be for value received or for a valuable consideration, but the amount is not named. If it had been, some light might have been thrown upon the subject. At least, we should have known the estimate which Trezvant put upon 6,000 acres of Ohio land.
Although the assignment was made in 1814, th-e assignees make no location until 1823, another period of almost ten years. They then wait fourteen years longer, until 1837, before they attempt to enforce their claim by suit. At this time, Colonel Anderson, the principal surveyor, and most others who may be supposed to have been intimately acquainted with these transactions, are dead, and their testimony can not be had. Taking all these circumstances together, and it seems to- me to be a strong case in which to presume an assignment, and such is the opinion of the court.
Tench, then, having an assignment of this warrant, and having procured the entry and survey of Ho. 729 to be made, and that being a subsisting survey at the time of the entry and survey of the plaintiff’s lessors, their patent is void, and they have no title to the premises in controversy.
A new trial will be granted, costs to abide the event of the suit.